### *In re* WILLIAM STEELE *et al.* Guardians, etc.

1. COUNTY COURT—*equitable jurisdiction of.* The county courts in this State have equitable jurisdiction in the allowance of claims against estates, and in the adjustment of the accounts of guardians, and in such cases may adopt the forms of procedure in equity.

2. GUARDIANS—*treated as trustees of wards.* Guardians were treated at common law as trustees, and as such were held responsible for the faithful discharge of the duties imposed upon them. Our statute has made no change in this respect, but has given a summary power to the county court to oblige guardians to render an account upon oath touching their guardianship, instead of compelling a resort to a court of equity, as at common law.

3. SAME—*account returned by, not conclusive.* The account of moneys received on sale of real estate required to be made by the guardian to the county court under oath, is not conclusive upon the wards when assailed by them. The county court has the right to allow or reject the report, may require proofs, examine witnesses, and resort to all means necessary to ascertain the truth. This is its duty, and its powers in this respect are co-extensive with a court of chancery.

4. SAME—*nature of citation to account, and procedure.* A citation to a guardian to account is not a suit at law, but the exercise of a summary power, in the nature of a bill in equity, to compel a discovery against the

guardian. Where the return of the guardian. is made to a citation to account, the guardian should be allowed the privilege of defense, if his account is assailed, and to submit all legitimate proof to establish the same.

5. GUARDIAN'S REPORT—*parol evidence to explain mistake apparent on its face.* Where there was a probable, if not an evident, mistake in a guardian's report of the amount of the purchase money of lands sold by him under an order of court, it was *held*, that, where the guardian was sought to be charged with the amount thus reported, parol proof was admissible of the interest purchased and of the amount of purchase money received by him on the sale.

6. But in such a case, parol evidence is inadmissible for the purpose of showing that the wards had no interest in the lands sold, as the guardian was estopped, by his act in selling the same as theirs, from disputing such fact, and also by the finding of the court, which must be regarded as *res adjudicata.*

7. GUARDIAN'S ACCOUNT—*right to retain funds to pay debts of deceased ancestor.* Where letters of guardianship were granted in 1855, during the administration of the estate of the ward's ancestor, and letters of administration were granted to one of the guardians in 1856, of the same estate, and the guardians were cited to make settlement in 1868, it was *held*, that they had no right to retain funds derived from a sale of their ward's land to pay claims against their father's estate, as such claims were barred by the statute of limitations and by *laches.*

8. WITNESS—*competency of party under act of 1867.* A guardian, on settlement of his accounts, is a competent witness to testify to any facts occurring after the death of the father of the wards, and therefore competent to explain an error or mistake apparent on the face of his report of the sum realized from the sale of the wards' interest in lands.

9. INTEREST—*in stating guardian's account.* In stating a guardian's account on final settlement, the court should, at the end of each year, add the interest to the principal, and thus compound the interest annually until the final order.

APPEAL from the Circuit Court of Lake county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This proceeding originated in the county court of Lake county, and was taken by appeal to the circuit court, and from the order of the latter court the guardians appealed to this court.

Mr. W. S. SEARLS, for the appellant.

Messrs. SMITH, UPTON & WATTERMAN, for the wards.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This was a proceeding to compel guardians to account for moneys received by them.

The rules and principles of equity must, to a certain extent, prevail in such an adjudication. Guardians, at common law, were treated as trustees, and as such were held responsible for the faithful discharge of the duties imposed upon them. The aid of courts of chancery has always been invoked for a compulsion of the execution of the trusts, and the protection of the infant. In this respect the statute has made no change, but has given a summary power to the county court to oblige guardians to render accounts upon oath, touching their guardianship.

When the guardians exhibited their account, what was the duty and what were the powers of the court?

The account was under oath, but was not therefore *prima facie* correct. The statute requires that an account of all moneys received by any guardian for the sale of real estate shall be returned, on oath, to the probate (now county) court. R. S. 1845, sec. 11, p. 267. But this return, unless assailed by the wards, is not conclusive upon them. The court has the right to allow or reject the report, may require proofs, examine witnesses, and resort to all means necessary to ascertain the truth. This is its duty, and its powers in that regard are co-extensive with those of a court of chancery. *Bond* v. *Lockwood*, 33 Ill. 212.

In the allowance of claims against estates, the county court has equitable jurisdiction, and may adopt the forms of proceedings in equity. *Dixon* v. *Buell*, 21 Ill. 203. It may likewise possess a similar jurisdiction and adopt the same mode of procedure in the adjustment of the accounts of guardians.

The citation to account is not a suit at law, but the exercise of a summary power conferred by the statute. In *Gilbert* v. *Guptill*, 34 Ill. 112, it was likened to a bill in chancery for

discovery against the guardian. It is necessary, in the language of the court, "to sift his conscience," and thus make certain of the facts.

The statute (*vide* sec. 11 before cited,) makes it compulsory upon the guardian to return an account of all moneys received for the sales of real estate, to the county court. He has no right to await the order of the court for that purpose. If commanded, however, he must obey, or be subject to attachment for contempt.

When the citation has been issued and served, and a return made, and its correctness is assailed by the ward, the guardian should be allowed the privilege of defense, and to submit all legitimate proof to establish his account. In view of these general principles, we will examine the facts of this case.

The county, as well as the circuit court, charged the guardians with over $4000 more than they reported in answer to the citation. The serious contest arises in regard to this difference.

The only evidence of the larger amount is a report made by the guardians to the circuit court of their action under a decree authorizing them to sell the real estate of their wards, for their education and support. In 1856 they filed their petition, alleging that their wards were seized of an undivided one-fourth interest in certain parcels of land which are described. The decree ordering the sale found the same interest as was stated in the petition, and directed a sale of such interest.

The report of the sale recites the authority to sell the same interest, and describes the land by metes and bounds and quantity of acres. It then states that each tract sold for $10 per acre, and the amount of money placed opposite to each tract is the product of the number of acres multiplied by $10—the price per acre, with the exception of one tract, 80 acres, the total value of which, at the same rate per acre, is set down at $2400. The price of three tracts is given by

affixing opposite to them $10 per acre, in figures, and then commas are used to designate the same price for the subsequent tracts.

The reasonable inference, from the entire report, would be that, as only one-fourth interest was ordered to be sold, and the land sold for so much per acre, the total proceeds would be only one-fourth of the whole number of acres, multiplied by ten.

There is an apparent error as to each tract, and it is manifest error to state that 80 acres, at $10 per acre, will produce $2400.

As there is a probable, if not an evident, mistake in the report, it should not be held conclusive upon the guardians. Upon principles of equity, they should have been permitted to correct it by satisfactory proof. For this purpose parol proof of the interest purchased, and the actual amount of purchase money received, was admissible. It appears, too, from the face of the report, that it was made by the attorneys of the guardians. For aught that appears, they never saw it or knew its contents or exact form, and it would be unconscionable, under the circumstances, to conclude them by it.

If a report was fair upon the face, without any apparent mistake, we do not wish to be understood as holding that parol evidence would then be admitted to contradict or explain it.

The admission of evidence of the character indicated would not affect the decree or invalidate the sale. The court had jurisdiction of the parties, the order to sell and the sale were regular, and the confirmation vested the title in the purchaser.

The only question is, where evident error appears as to the amount of money received at the sale, are the guardians concluded by such error? Accident and mistake are ancient heads of chancery jurisdiction, and great injustice might result, in this case, unless the principles of equity are applied, the proof heard and the error corrected.

Evidence should only be heard, however, to show that the purchase money of the real estate, as stated in the report, was put down at too large a sum, and not for the purpose of showing that neither the deceased nor his heirs had any interest in the lands. The evidence offered to prove the latter, was properly excluded.

The guardians are estopped from denying the interest set out in the proceedings to sell. The petition was their own deliberate act, and the finding of the court thereupon has been acquiesced in by them for twelve years, and the question must be regarded as *res adjudicata*. Besides, in the inventory of the real estate, and in the account rendered by the guardians, and sworn to, the interest of the heirs is stated to be one-fourth in the lands. They should not be allowed to perjure themselves by a subsequent denial of their sworn statement made with a presumed knowledge of all the facts.

There was no error in the refusal to allow the claims of the guardians against the estate of the deceased. They were all barred by the statute of limitations and by *laches*. Letters of administration were granted to one of them in 1856. They were appointed guardians in 1855, during a prior administration. The citation was not issued until in 1868. This long time, without any attempt at a settlement of the estate, or the presentation of claims in any of the modes provided by the statute, must be regarded as a bar to all debts, and we must presume an adjustment of all rights, except those of the infants.

The alleged error in refusing compensation for the care and attention to, and the board and clothing of, the infants, does not exist. There was a contrarity of evidence as to the services of the children, and their expenses, and we ought not to disturb the finding of the court.

We have commented upon the propriety of the admissibility of parol evidence, in this particular case, to prove the incorrectness of the report of the guardians as to the amount received for the sale of the real estate, not because it was not

heard, but, as we infer from the order of the court and the argument of counsel, because the court did not give any consideration to it.

The guardians testified that the amount paid, or agreed to be paid, at the time of the sale, was one-fourth of the amount stated in the report. They were uncontradicted, save by the report, which, by fair construction, corroborated them. The truth of the report was thus overthrown, if the guardians were competent witnesses. They were not disqualified by the act of 1867. (Sess. L. 1867, p. 183.) They are within the first exception to section 2 of that act, as they testified to facts which occurred after the death of the father of the wards.

We shall not re-state the account, as both parties may desire to offer additional testimony as to the actual amount of money received.

It may also be proper to remark that the court should, at the end of each year, add the interest to the principal, and thus compound the interest annually, until the final order.

The judgment is reversed and the cause remanded.

*Judgment reversed.*