MARTIN DOUGHERTY, Sr. *et al.*

*v.*

WILLIAM E. HUGHES *et al.*

*Filed at Ottawa November 23, 1896—Rehearing denied March 6, 1897.*

1. APPEALS AND ERRORS—*appeal lies from Appellate Court in actions ex contractu when amount involved is $1000.* An appeal lies from the Appellate to the Supreme Court in actions *ex contractu,* in law or equity, when the amount of the judgment appealed from is $1000 or over.

2. EQUITY—*party having remedy at law cannot resort to equity.* A court of equity cannot entertain a bill the whole scope and object of which are to compel a guardian to pay the complainant a debt claimed to be due him for professional services rendered as attorney for the ward's estate.

3. SAME—*permission by probate court to guardian to pay out money does not create a trust.* An order of the probate court giving leave to a guardian "to expend a sum not exceeding" a certain amount for legal services rendered his ward's estate, does not operate to create a trust fund, so as to enable attorneys who rendered the services to resort to equity.

4. SAME—*equity will not ordinarily take jurisdiction in administration of estates.* A court of equity will not, except in extraordinary cases, take the administration of an estate from a probate court, but when it does assume jurisdiction the entire administration will be taken into its hands, and not merely a part thereof.

5. COURTS—*probate court may exercise equitable powers in matters of guardianship.* In matters relating to guardianship the probate court may exercise equitable powers, and may enter and enforce all orders necessary to a proper and complete settlement of the ward's estate.

6. ATTORNEYS AT LAW—*in the absence of agreement attorney has no lien on judgment.* In the absence of an express agreement out of which an equitable assignment arises, an attorney acquires no lien upon a judgment rendered in a suit prosecuted by him, nor upon the money recovered by means of his legal services.

7. GUARDIAN AND WARD—*guardian cannot compel, in equity, return of money wrongfully paid out.* Where a guardian expends his ward's money without authority of law, the ward has his action on the guardian's bond or may resort to a proceeding in the probate court for an accounting, but the guardian himself cannot resort to equity to compel a return of the money so expended.

*Hughes* v. *Dougherty,* 62 Ill. App. 464, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

In July, 1892, Martin Dougherty, Jr., a minor, received an injury through the negligence, as alleged, of the Chicago, Milwaukee and St. Paul Railway Company. The People's Casualty Claim Adjustment Company, a corporation in Chicago, was then engaged in collecting claims of that character, and said company applied to Martin Dougherty, Sr., the father of the minor, for the collection of the claim for damages against the railroad company. A power of attorney was executed by Martin and Nellie Dougherty, parents of the minor, as follows:

"In consideration of one dollar to us paid, and of service rendered and to be rendered by the People's Casualty Claim Adjustment Company in the matters herein mentioned, we, Martin and Nellie Dougherty, for our minor son, Martin Edward Dougherty, of 154 Edgar street, Chicago, Illinois, by these presents do make, constitute and appoint the said company our attorney, hereby waiving our power to revoke this instrument, for us and in our name, place and stead to settle, adjust, arrange and collect the claim we have against the Chicago, Milwaukee and St. Paul Railroad Company by reason of the injury received by our son, Martin Edward Dougherty, at Edgar street and the railroad tracks, on or about the 20th of May, 1892. Authority is hereby given to sue, in which case we will pay all court costs. In the event our claim is settled without suit, we hereby promise to pay said company for its services one-fourth of the amount received, and in case of suit, one-third of whatever amount is collected. We further promise to accept our share as above in full settlement of our claim, and that we will refer all propositions of settlement to said company, giving and granting to our said attorney full power."

165—25

After the execution of the power of attorney the casualty company employed the complainants William E. Hughes and Cyrus J. Wood to institute a suit against the railroad company. Suit was commenced in the circuit court of Kane county, where a judgment was recovered for $10,000. The master in chancery found that up to this point complainants Hughes and Wood were not employed by the minor or his next friend, or the parents of the minor, but acted solely for the casualty company under their contracts with it. The said company paid Hughes' expenses at the trial and also $240 attorney's fees, which sums were accepted by him in full payment for services and expenses. Wood was acting for the company upon the basis of receiving ten per cent of the amount received by the company in cases where he was attorney, and said minor's case was commenced under that arrangement by said Wood, and he acted under said arrangement to the time of entry of judgment in the circuit court. The railroad company appealed to the Appellate Court, and that court affirmed the judgment of the circuit court. The railroad company then appealed to this court. In this court complainants procured an order appointing Adolph Moses guardian *ad litem* for the minor, and the guardian *ad litem* employed complainant Hughes to attend to the case here, but before a hearing was had the case was settled, the railroad company paying Martin Dougherty, Sr., who had been appointed guardian of the minor, $9500.

Thereupon, on February 2, 1895, William E. Hughes and Cyrus J. Wood filed their bill in the Superior Court of Cook county, making defendants thereto the senior and junior Martin Dougherty, (the former then the guardian of the latter,) and also Charles W. Beck and the People's Casualty Claim Adjustment Company. The bill sets forth the performance by complainants of the legal services in and about the original suit, which services, it is alleged, were performed at the request of Martin Dougherty and with the consent of his next friend; that

the reasonable value of said services was $2000 besides expenses, and that such services were, under the circumstances, necessaries supplied by complainants to the said minor during his minority; that the original suit was fraudulently compromised by Martin Dougherty, Sr., who confederated with the casualty company and Beck, its manager, with the purpose of cheating the minor, Martin Dougherty, Jr., and delaying and defrauding complainants in the collection of their claim for services. The bill further alleges that the probate court had entered an order that said guardian, out of money in his hands, should be allowed to pay the sum of $3166.66 for services to the attorneys entitled to receive it, and that the guardian, confederating with the casualty company and Beck, repudiated complainants' services, and fraudulently paid the $3166.66 to the former. The bill prayed that the guardian, the casualty company and Beck be required to account for the moneys received belonging to said minor.

E. J. Whitehead was appointed guardian *ad litem* for the minor, and on leave of court filed a cross-bill, among other things denying that the minor or his next friend, or any one in his behalf, had ever employed complainants, and alleging that whatever they did was by virtue of an employment by the casualty company, and that complainants had no right or claim to any part of the fund allowed by the county court to be paid for legal services. The cross-bill prayed that the casualty company, which had received the sum of $3166.66 so set apart by the county court, might be decreed to repay the same to the guardian of the minor.

The bill and cross-bill were referred to a master in chancery, who took proofs, upon which the master found that the sum of $3166.66 ought to be returned by said casualty company to the guardian; that complainants, Hughes and Wood, were not entitled to any of said fund for the services rendered by them during the trials of

the case in the circuit court, said services having been rendered under and by virtue of their employment by the casualty company; that for services rendered by them in the Appellate Court and Supreme Court complainants should be paid a reasonable fee, which the master fixed at $1000, together with certain expenses.

On the hearing the Superior Court of Cook county dismissed the original and cross-bills for want of equity. On appeal the Appellate Court affirmed the decree of the Superior Court in dismissing the cross-bill, but the decree dismissing the original bill was reversed and the cause remanded, with instructions to the Superior Court to enter a decree in favor of complainants therein, and against Martin Dougherty, Sr., and the People's Casualty Claim Adjustment Company, defendants therein, for the sum of $1000 and costs. From this judgment rendered by the Appellate Court the casualty company and Martin Dougherty, Sr., prosecute this appeal.

DEFREES, BRACE & RITTER, for appellant the People's Casualty Claim Adjustment Company:

Except in extraordinary cases a court of equity will not supersede the probate court, and assume jurisdiction in the administration and settlement of estates. *Shepard* v. *Speer,* 140 Ill. 246; *Ames* v. *Ames,* 148 id. 344; *Harding* v. *Shepard,* 107 id. 264; *Hales* v. *Holland,* 92 id. 494; *Heustis* v. *Johnson,* 84 id. 61; *Crain* v. *Kennedy,* 85 id. 340; *Winslow* v. *Leland,* 128 id. 304; *Duval* v. *Duval,* 153 id. 49.

In the settlement of estates and the adjustment of guardians' accounts the probate court is not confined to the exercise of legal powers, but may also exercise equitable powers. *Shepard* v. *Speer,* 140 Ill. 245; *Wadsworth* v. *Connell,* 104 id. 369.

Courts of chancery will only aid the probate court with regard to strictly equitable claims. *Goff* v. *Robinson,* 60 Vt. 633; *Strubher* v. *Belsey,* 79 Ill. 307; 1 Pomeroy's Eq. Jur. sec. 351; 2 Woerner on Administration, sec. 500.

MCCRACKEN & CROSS, for appellant Martin Dougherty, Sr.:

An attorney at law has no general lien upon the proceeds of a judgment secured through his efforts. *Story* v. *Hull*, 143 Ill. 506.

E. J. WHITEHEAD, for appellant Martin Dougherty, Jr.

WILLIAM E. HUGHES, and CYRUS J. WOOD, *pro sese:*

Where the legal remedy is not plain, adequate and complete, reaching the whole mischief and securing the whole right, a court of equity will take jurisdiction. 1 Story's Eq. Jur. 24, 25.

The alleged grant of jurisdiction to the probate court, by statute, does not oust that of a court of equity. *Labadie* v. *Hewitt*, 85 Ill. 341; *Sweeney* v. *Williams*, 36 N. J. Eq. 627; 1 Story's Eq. Jur. p. 89, sec. 80.

A guardian is a trustee at common law. *In re Steele*, 65 Ill. 324.

As trustee he is accountable to a court of equity. *Grattan* v. *Grattan*, 18 Ill. 171; *Boyd* v. *Lockwood*, 33 id. 218; *Cowles* v. *Cowles*, 3 Gilm. 435; *Lynch* v. *Rotan*, 39 Ill. 19.

Equity jurisdiction is properly invoked against a guardian in the management of the estate, and in the settlement, distribution and preservation thereof. 2 Story's Eq. Jur. 35, 688; *Cowles* v. *Cowles*, 3 Gilm. 435.

Mr. JUSTICE CRAIG delivered the opinion of the court:

A motion to dismiss the appeal for want of jurisdiction was reserved until the hearing. As has been seen, the judgment appealed from was for $1000, and under the ruling in *Baber* v. *Pittsburg, Cincinnati and St. Louis Railroad Co.* 93 Ill. 342, and *Umlauf* v. *Umlauf*, 103 id. 651, the amount involved was sufficient, under the statute, to authorize an appeal to this court. The motion to dismiss the appeal will be overruled.

The first question presented is, whether a court of equity has jurisdiction to entertain the bill. It appears

from the master's report, (and the report seems to be sustained by the evidence,) that on the commencement and prosecution of the suit in the circuit court the complainants Hughes and Wood acted solely for and under employment of the casualty company, and they were paid for their services in the circuit court. After an appeal was taken to the Appellate Court the relations existing between the complainants and the casualty company were dissolved, and it is claimed by the complainants that they were employed to prosecute the appeal in the Appellate Court by Samuel W. Hurdle, next friend of the minor, and that the parents of the minor consented in writing that they should attend to the cause in the Appellate Court. Upon looking into the evidence it appears that Samuel W. Hurdle was selected as next friend of the minor by the casualty company before the suit was instituted, and that he acted for the company as solicitor of claims. He testified that he made no arrangement with the complainants to go on with the case and gave them no authority to do so. Mr. and Mrs. Dougherty testified that Wood called on them after the judgment had been obtained in the circuit court and said he and Hughes desired to go on with the suit, to which they replied that the casualty company, and its president, Beck, were to employ lawyers and pay them; that the whole matter was in Beck's hands, and whatever he agreed to would be satisfactory; that Wood replied that the company and Beck had no objections, but were willing for complainants to continue in the case; that relying on their representations they signed a paper authorizing the complainants to appear in the case. It also appears that after the trial of the cause in the circuit court of Kane county, Wood and the casualty company entered into an agreement in writing, in which Wood agreed to accept $200 in full for services in the company's cases, except the cases of *Dougherty* v. *Chicago, Milwaukee and St. Paul Railway Co.,* *Elder* v. *Atchison, Topeka and Santa Fe*

*Railroad Co.* and *Hall* v. *Pennsylvania Co.* The agreement contained the following stipulation on behalf of Wood:

"I hereby agree to withdraw from all such suits in which I now appear as attorney of record in the circuit and Superior Courts of Cook county, and in the circuit court of Kane and Will counties, and in the United States Circuit Court of the Northern District of Illinois. In addition to the payment of the above sum of $200, as aforesaid, the said Cyrus J. Wood is to receive, when the collections are made, the amount set opposite each case given, viz.: Dougherty v. C., M. & St. P. Ry. Co., $150; Elder v. A., T. & S. F. R. R. Co., $100; Hall v. Penn. Co., $25. And also in full for any other services rendered, either legally or otherwise, connected with any business of said company or its clients."

It also appears that after the judgment was affirmed in the Appellate Court and an appeal was taken to this court, on motion of complainant Hughes, Adolph Moses was appointed guardian *ad litem* for the minor, and he at once employed Hughes as his attorney in this court, and under that employment he acted until the case was settled. In this connection it is proper to state that Wood testified that he was employed by Hurdle, the next friend, to attend to the case in the Appellate Court, and Beck testified that on the settlement with Wood he was to remain in the case until it was finally settled or disposed of, but the $150 mentioned in the agreement was to pay him for his services.

The foregoing are, in brief, all the circumstances under which the services were rendered for which the complainants seek to recover. As has been seen, the complainants were employed to prosecute the case to final judgment in the circuit court by the casualty company. For those services they were employed and paid by the casualty company, and no liability ever existed against the minor, the guardian, or the fund of the minor in the hands of the guardian. As to the services rendered in

the Appellate Court, there is some evidence in the record tending to prove that complainants were employed by Hurdle, the next friend of the minor, but the preponderance of the evidence is the other way. Wood testified that they were employed by Hurdle, but Hughes testified that he never had any conversation with Hurdle in reference to appearing for plaintiff in the case, and Hurdle testified that he did not employ the complainants. In addition to this, Wood signed a written agreement with the casualty company which shows that he had an attorney's fee of $150 in the *Dougherty case,* to be paid when the judgment should be collected. This would seem to indicate that he was acting for the casualty company in the Appellate Court. Beck, the president of the company, testified that the $150 to be paid Wood was for services that had been rendered and for services to be rendered up to the time the claim should be collected. If the witness is correct in this, then it is plain that Wood was acting in the Appellate Court for the casualty company. No importance is to be attached to the fact that the parents of the minor requested complainants to attend to the case in the Appellate Court, as they had no authority to bind the minor or his estate, even if they attempted to do so. But if the complainants were employed by Hurdle, as next friend of the minor, we do not think they could recover for the services rendered, in a court of equity. It will be remembered that the purpose of the bill is to collect a debt claimed to be due for professional services. This is the whole scope and object of the bill. It will not be necessary to cite authorities to establish the rule that a party cannot resort to a court of equity where there is a remedy at law; and where a laborer or a professional man has been employed to labor or render professional services for another, and the labor has been performed or the services rendered, an action at law will lie to recover the amount due. Here it is claimed that professional services were rendered under

an employment and these services had not been paid for. If such is the case, no reason is perceived why the complainants have not an adequate remedy at law, and if they have, equity will not take jurisdiction.

But it appears that after the $9500 had been collected by the guardian the probate court of Cook county made the following order: "This day came Martin Dougherty, guardian of Martin Dougherty, minor, and also came the People's Casualty Claim Adjustment Company, and also came Messrs. Wood and Hughes, and moved the court for an allowance of attorney's fees in the estate of said minor, and on motion it was ordered by the court that said guardian have leave to expend a sum not to exceed one-third of the amount recovered in a right of action arising out of the personal injuries of said minor, and settled under order of this court, as attorney's fees in said estate, the said sum to include all legal services, of whatever nature, in the estate of said minor." Under this order granting leave to the guardian to expend not exceeding one-third of the amount recovered for attorney's fees, it is contended that $3166.66, being one-third of the estate, was set apart and devoted to the payment of the attorney's fees rendered, and that those who rendered services in producing the fund became beneficiaries of the trust fund, and had the right to resort to a court of equity in the distribution of the fund among those entitled to the money.

As between a minor and his guardian all the money received by the guardian belonging to his ward is a trust fund, the guardian holding in a fiduciary capacity. But the minor, and he alone, is the *cestui que trust.* We do not see how this order established the relation of trustee and *cestui que trust* between the complainants and the guardian of Martin Dougherty, Jr. In the first place, the order does not set apart one-third of the money collected by the guardian for any purpose whatever. The order, when properly understood, is one which merely author-

izes the guardian to pay attorney's fees which may have been incurred by the minor, or the guardian for the minor, in the prosecution of the action against the railroad company. Under this order the guardian had no authority to pay out one-third of the money in his hands or pay out money to any person he might see proper. He had no right to pay more money than was actually and in good faith due, and to persons to whom it was due, and if he exceeded his authority he and his sureties would be liable. The order was a mere permission to apply a portion of certain money in the hands of the guardian, without naming what sum, to the payment of a certain debt. Under this permission the guardian was not bound to pay one dollar, one hundred dollars, or any other definite or fixed amount. It was an order in which neither the complainants nor the casualty company could acquire any vested rights. Under this order, should the guardian pay out to those entitled to receive the money a reasonable amount, his action would be approved by the probate court; but, on the other hand, should he pay out money to persons not entitled to receive it, his action would not be approved. We do not, therefore, regard the fund in controversy as a trust fund, in the sense that it would be within the power or duty of a court of equity to take control of the fund and distribute it among the persons who might be entitled to receive it. Moreover, under paragraph 69 of chapter 37 of the Revised Statutes, probate courts are clothed with original jurisdiction in all matters of probate, the settlement of estates of deceased persons, the appointment of guardians and conservators and settlement of their accounts. So far as the expenditure of the money in the hands of Martin Dougherty, Sr., guardian of Martin Dougherty, Jr., belonging to the ward, is concerned, the probate court has full power and authority to make and enforce any necessary order.

The law is well settled that a court of equity will not, except in extraordinary cases, take jurisdiction in the ad-

ministration or settlement of estates.  (*Shepard* v. *Speer*, 140 Ill. 238; *Ames* v. *Ames*, 148 id. 321; *Harding* v. *Shepard*, 107 id. 264; *Hales* v. *Holland*, 92 id. 494; *Duval* v. *Duval*, 153 id. 49.)  In the last case cited, after laying down the rule as above stated, it is said (p. 53): "Some special reasons must be shown why the administration should be taken from the probate court."  It is also a well established rule that where a court of equity assumes jurisdiction it will take the whole administration of the estate into its hands, and will not assume jurisdiction over a part. (*Winslow* v. *Leland*, 128 Ill. 304; *Freeland* v. *Dazey*, 25 id. 294.) Moreover, in the settlement of estates, and in matters relating to guardians and the settlement of their accounts, probate courts are not controlled by the strict rules of law, but they exercise equitable powers.  (*In re Steele*, 65 Ill. 322; *Schlink* v. *Maxton*, 153 id. 447).  Here the court of equity has not attempted to take jurisdiction over the entire estate of the minor.  Indeed, no foundation was laid for the assumption of such jurisdiction, by the bill. The complainants have no such interest in the settlement of this guardianship as would entitle them to interfere with it in any court.  The case made by the complainants by their bill and evidence is merely an application to a court of equity to require the guardian of a minor to pay out of funds in his hands belonging to the minor, an alleged debt for professional services rendered for the minor.  There is no similarity between this case and one where a court of equity undertakes to administer on trust funds, or where a court of equity undertakes, for some extraordinary reason, to take upon itself the entire administration of an estate.  Indeed, we are aware of no authority which, under the facts of this case, would authorize a court of equity to take jurisdiction.

*Townsend* v. *Radcliffe*, 44 Ill. 446, is relied upon as an authority to sustain complainants' bill.  In that case one William Radcliffe was appointed administrator of the estate of Nancy Radcliffe, his deceased wife, who died

leaving certain property which she owned in her own right, and leaving children as her heirs. Her husband, after the expiration of two years, settled the estate in the county court and was discharged as administrator. In his final report he charged himself with a certain sum of money,—a balance in his hands after the payment of all liabilities,—which he claimed to own as husband of the deceased. The children and heirs of the deceased filed a bill in equity to compel the former administrator · to account for the money in his hands which he claimed as husband of the deceased, and the court held the heirs were entitled to the money as it had not been reduced into the possession of the husband during the lifetime of the deceased, and that a court of equity had jurisdiction. We do not think that case is an authority to control here. There the estate had been settled and had passed out of the probate court. When the bill was filed the county court had ceased to exercise jurisdiction over the estate, and the bill was filed to compel the former administrator to account for certain money which passed into his hands on final settlement of the estate, which belonged to the complainants. There may be found expressions in the opinion delivered in the case which seem to sustain the position of complainants, but the case differs so much from this that it cannot control here. It is true that complainants obtained the judgment in favor of the minor which produced the fund in the guardian's hands which they are now attempting to reach; but they do not claim or pretend that they had a contract under which they were to receive any portion of the judgment for their services, or that they had a contract which gave them a lien on any portion of the judgment. In the absence of an express agreement out of which an equitable assignment arises, an attorney acquires no lien upon a judgment or decree rendered in an action prosecuted by him, or upon the money or fund recovered by means of legal services. (*Story* v. *Hull,* 143 Ill. 506.) Complainants

occupied no better position in relation to the fund in question than a stranger would occupy who was a mere creditor of the minor.

It is also claimed by the guardian *ad litem* and next friend of Martin Dougherty, Jr., that the court erred in dismissing the cross-bill which was filed to require the casualty company to return the money paid to it by the guardian, Martin Dougherty, Sr. If the guardian paid out money belonging to the ward without authority of law the minor has a remedy at law on the guardian's bond, or proper proceedings may be instituted in the probate court to require the guardian to account for such moneys as came to his hands as guardian. But we do not think resort can be had to a court of equity by cross-bill, as was attempted to be done here.

The judgment of the Appellate Court will be reversed and the decree of the Superior Court will be affirmed.

*Judgment reversed.*