691 F.2d 828
 McKEE-BERGER-MANSUETO, INC., A New York Corporation,
Plaintiff-Appellee,
v.
BOARD OF EDUCATION OF the CITY OF CHICAGO, an Illinois body
politic and corporate, Defendant;
McKEE-BERGER-MANSUETO, INC., a New York Corporation,
Interpleader Plaintiff-Appellee,
v.
MONTICELLO REALTY CORPORATION, et al., Interpleader Defendants,
and
World Express, Inc., Interpleader Defendant-Appellant.
 No. 81-1001.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 10, 1981.
Decided July 23, 1982.*
Opinion Oct. 25, 1982.
 
 Thomas J. Kelly, Spring Green, Wis., for interpleader defendant-appellant.
 Herbert Morton, Concannon, Dillon, Snook & Morton, Chicago, Ill., Gilbert S. Rothenberg, Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.
 Before SWYGERT, Senior Circuit Judge, CUDAHY and POSNER, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 This case commenced in 1977 as a breach of contract action filed in the district court by McKee-Berger-Mansueto, Inc. ("MBM") against the Board of Education of the City of Chicago (the "Board"). After trial, the district court entered a substantial money judgment in MBM's favor. In this appeal we are asked to review certain district court orders which enforced that judgment and disbursed the fund created by the judgment among various competing claimants. We affirm.
 
 I. FACTS
 
 2
 MBM filed its complaint in the district court on May 13, 1977, seeking recovery from the Board for an alleged breach of a written contract for professional construction management services. Jurisdiction was based on diversity of citizenship. On January 24, 1979, the court entered judgment in favor of MBM and awarded it a principal amount of $413,976.54 plus interest. The judgment, except for the award of pre-judgment interest, was affirmed by this court on July 16, 1980. McKee-Berger-Mansueto, Inc. v. Board of Education, 626 F.2d 559 (7th Cir. 1980). After a petition for rehearing en banc was denied, our mandate issued on September 11, 1980. Following this apparent termination of the litigation, counsel for MBM on September 17, 1980, served on the Board's attorney a notice of attorneys' lien, in conformity with the procedural requirements of the Illinois Attorneys' Lien Act, Ill.Rev.Stat. ch. 13, § 14 (1982). The notice asserted a claim to one-third of the proceeds of the judgment obtained by MBM, a share agreed upon by MBM and its attorneys in a contingent fee agreement, dated May 5, 1977, and filed in the district court.
 
 
 3
 Meanwhile, during the long gestation period of the district court judgment, several creditors of MBM as well as the United States (the "government") were asserting their own claims against MBM's assets. The government filed four notices of tax lien against MBM in New York, the location of MBM's principal executive office. These notices, recorded on May 24, 1977, August 3, 1977, November 15, 1977, and April 25, 1978, respectively, represented unpaid tax assessments in an amount exceeding $600,000. Three other creditors of MBM also perfected liens on MBM's property. Monticello Realty Corporation became a judgment lien creditor on June 21, 1978, when it commenced citation proceedings against MBM in state court, seeking $90,340.67 in satisfaction of four judgments it had obtained against MBM. World Express, Inc., achieved judgment lien creditor status on August 23, 1978, the date on which it served a garnishment summons on the Board. World Express seeks payment of a $102,859.05 judgment against MBM. The third creditor is C.F. Industries, Inc., which filed its state court citation proceedings on May 16, 1979, and seeks satisfaction of a $7,226.61 judgment against MBM.
 
 
 4
 On September 29, 1980, MBM instituted further proceedings in the district court to enforce its judgment. Its motion, styled as a Supplemental Plea of Interpleader, recited that the Board was prepared to satisfy the judgment against it by depositing the necessary funds with the clerk of the district court. The Board was reluctant to do so, the motion continued, because of certain injunctions entered in state court on behalf of Monticello Realty and C.F. Industries. These injunctions prohibited the Board from paying any money directly to MBM. In view of these conflicting claims, including the tax lien of the government, MBM's Supplemental Plea requested the district court (1) to order the Board to deposit funds in satisfaction of the judgment with the clerk of court, (2) to award $166,478.62 in fees to MBM's attorneys as provided in the contingent fee agreement, and (3) to disburse the remainder of the fund among the various claimants. The Supplemental Plea was served on the government, Monticello Realty, World Express and C.F. Industries, naming all of them as interpleader defendants. On October 3, 1978, the district court granted the first part of MBM's request, issuing an order directing the Board to pay over to the clerk of court the sum of $413,976.54 together with post-judgment interest. The district court in addition scheduled hearings to determine the relative priorities of the competing claimants to the fund. Monticello Realty and C.F. Industries filed answers to the Supplemental Plea; World Express filed no responsive pleading.
 
 
 5
 The motion was heard by the district court on December 19, 1980. After the court heard argument concerning jurisdiction and relative priorities, it granted MBM's request to treat the Supplemental Plea alternatively as a motion for the disposition of funds deposited with the court. The district court also granted the government's motion to be dismissed as an interpleader defendant and granted it leave to file an intervenor's complaint asserting its tax lien. During the afternoon session of the hearing, the government was permitted to introduce copies of its tax lien notices and certificates of assessments and payments, all of which established the validity of the tax lien. Copies of the notices of tax lien had been attached to MBM's Supplemental Plea and thus had been served on all parties. At the conclusion of the hearing, the district court announced that the government appeared to enjoy a lien superior to all claimants except MBM's attorneys. It then scheduled a further hearing for December 22, 1980, at which the other creditors would be allowed to prove their claims.
 
 
 6
 At the December 22 hearing, Monticello Realty and C.F. Industries introduced evidence documenting their claims on MBM's assets. Counsel for World Express did not appear and no evidence of its lien was introduced. At the close of the hearing, the district court awarded MBM's attorneys $166,478.62 (plus a portion of the accrued interest), representing the full amount of their claim. The balance of the fund on deposit with the court ($289,576.07 plus accrued interest) was awarded to the government in partial satisfaction of its tax lien.
 
 
 7
 On December 24, 1980, World Express belatedly moved to introduce documents establishing its lien on MBM's assets. The district court granted this motion but, on January 2, 1981, denied World Express' post-trial motion. From these orders of the district court disbursing the deposited funds, only World Express appeals.
 
 II. JURISDICTION
 
 8
 We are confronted at the outset of this complicated appeal with a challenge to the district court's jurisdiction to take control of the fund created by the January 24, 1979, judgment and to adjudicate the conflicting claims to that fund. World Express contends that its garnishment suit in state court, initiated prior to the entry of judgment in the district court, conferred on the state court exclusive jurisdiction to disburse the proceeds of the judgment, thereby divesting the district court of authority to enforce its judgment. In addition, World Express argues that MBM's Supplemental Plea of Interpleader was defective because MBM was not the proper party to initiate an interpleader. We reject these contentions and sustain the jurisdiction of the district court.
 
 
 9
 We note first that there can be little doubt that the district court, having had jurisdiction over the original diversity suit between MBM and the Board, possessed jurisdiction to enforce the judgment it rendered. The Supreme Court recognized such an authority long ago when it stated:
 
 
 10
 (T)he rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree.
 
 
 11
 ... (T)he jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied.
 
 
 12
 Riggs v. Johnson County, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867). See also Hamilton v. Nakai, 453 F.2d 152, 156 (9th Cir. 1971), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). We thus conclude that the district court had inherent authority to order the Board to deposit into court the funds necessary to satisfy the judgment.[1] We also conclude that the district court had authority to disburse those funds, in accordance with applicable state and federal laws, in "proceedings supplementary to and in aid of a judgment." Fed.R.Civ.P. 69(a).
 
 
 13
 The jurisdictional objection of World Express rests on the existence of its pending state court garnishment suit.[2] We disagree with the suggestion that this proceeding enjoys exclusive jurisdiction over the judgment proceeds. The garnishment action, upon the service of garnishment summons on the Board, may have created in World Express' favor a lien on MBM's assets (a lien which the district court was obliged to respect) but it could not deprive all other courts of the jurisdiction to adjudicate claims to property and funds within their authority. Nothing in the Illinois garnishment statute, Ill.Rev.Stat. ch. 62, §§ 39, 42 (1982), can be interpreted to confer such exclusive jurisdiction on the court in which the first garnishment action was commenced. The implausibility of World Express' argument is demonstrated by its application to World Express' own garnishment action: that action would be without jurisdiction over the fund because of the earlier garnishment proceeding commenced by Monticello Realty. Consequently, we hold that the district court possessed jurisdiction to compel satisfaction of its judgment and to adjudicate conflicting claims on the fund so created.
 
 
 14
 We also believe that MBM's Supplemental Plea of Interpleader was an appropriate device for invoking the district court's jurisdiction to disburse the fund. The motion stated MBM's interest in the fund and it was served on all interested parties allowing them to appear and assert their own claims. Technically, the styling of the motion as an interpleader was improper, as World Express points out. The appropriate party to initiate an interpleader was the Board which, unlike MBM, was a stakeholder potentially subject to multiple liability if it paid the wrong party. The Board could have voluntarily paid the money it owed MBM into court and commenced a federal interpleader action pursuant to Rule 22(1) of the Federal Rules of Civil Procedure. Instead, it requested MBM to obtain a court order compelling payment into court. Apparently, the Board recognized the threat of multiple liability but was either ignorant of the interpleader device or unwilling to make use of it. Under these rather peculiar circumstances, in which MBM in effect commenced an interpleader at the stakeholder's behest, we might regard the substance of the Supplemental Plea as an interpleader.
 
 
 15
 In any event, however, we think that MBM's attorneys could have proceeded by means of a simple petition in the district court to recover their fees. Such a procedure is authorized by the Illinois Attorneys' Lien Act, Ill.Rev.Stat. ch. 13, § 14 (1982), under which MBM's attorneys claim. 4 Illinois Law And Practice, Attorneys and Clients § 186, at 286 (1971); McCallum v. Baltimore & Ohio RR, 379 Ill. 60, 67, 39 N.E.2d 340 (1942). In essence, MBM's attorneys attempted to convert their Supplemental Plea into such a petition for the recovery of fees when they were granted a motion to treat the Supplemental Plea alternatively as a motion for the disposition of funds deposited with the court.[3] This amendment to their complaint was offered for the purpose of correcting any technical defects in the use of the interpleader. However their motion was styled, we conclude that the motion properly requested the district court to disburse the funds on deposit among the conflicting claimants. We can discern no prejudice to the rights of World Express in the technical form of MBM's pleadings. The Supplemental Plea afforded all interested parties advance notice and an opportunity to appear and assert their own claims to the fund. This provided more than adequate protection of World Express' rights.
 
 III. THE DISBURSEMENT TO THE GOVERNMENT
 
 16
 We begin our review of the district court's disbursement of the judgment fund with the finding that the government's tax lien had priority over all other claims except that of the attorneys for MBM.
 
 
 17
 The government enjoys a lien on all property and rights to property of a delinquent taxpayer. 26 U.S.C. § 6321 (1976). The lien is perfected by the filing of a notice of tax lien and does not become valid as against "judgment lien creditors" until the requisite notice has been filed. 26 U.S.C. § 6323(a) (1976). In the case of personal property, the subject of the instant dispute, the notice of tax lien must be filed in the office, designated under local law, of the state in which the property subject to the lien is situated. Personal property is deemed to be situated at the residence of the taxpayer at the time the notice of lien is filed. The residence of a corporate taxpayer is deemed to be the place at which the "principal executive office" of the business is located. 16 U.S.C. § 6323(f) (1976).
 
 
 18
 In the instant case, the government established that it filed four notices of tax lien in the office of the Secretary of State of New York, the location of MBM's principal executive office.[4] This is the office designated under state law for the filing of tax lien notices. N.Y. Lien Law § 240 (McKinney) (Supp.1980). Each of the four notices was recorded before the perfection of the liens of Monticello Realty, World Express and C.F. Industries. Consequently, the district court was correct in holding that the government's lien was superior to the claims of the three judgment lien creditors. The government's tax lien is not valid, however, as against an attorneys' lien perfected under state law, regardless of the filing of a tax lien notice. 26 U.S.C. § 6323(b)(8) (1976).[5] The government conceded, and the district court agreed, that the claim of MBM's attorneys had priority over the tax lien by virtue of this provision. Thus, the district court properly held that the government's tax lien was entitled to priority over all of the competing claims except that of the MBM attorneys.
 
 
 19
 World Express, although agreeing that the tax lien is inferior to the claim of MBM's attorneys, contests the disbursement to the government. World Express contends that its procedural rights were violated when the district court on December 19, 1980, granted the government's motion for dismissal as an interpleader defendant and granted it leave to file an intervenor complaint. World Express insists that it had a right to file a responsive pleading to the intervenor complaint and that its inability to do so prejudiced its case against the government's tax lien. We find no merit in this argument. The district court granted the government's motion when it appeared that there might be some problem with the form of MBM's Supplemental Plea of Interpleader. To insure that its claim was properly before the court and out of an abundance of caution, the government asked to file its complaint as an intervenor. The intervenor complaint added no new allegations and basically tracked the allegations of the Supplemental Plea, which had been served on World Express more than two months earlier. As noted above, World Express filed no Answer to the Supplemental Plea and, under the circumstances, its assertion of prejudice caused by the district court's realignment of the parties rings somewhat hollow. World Express had ample opportunity to contest the government's allegations and proof.
 
 IV. THE DISBURSEMENT TO MBM'S ATTORNEYS
 
 20
 We next consider whether the claim of MBM's attorneys was entitled to priority over the liens of World Express and the other judgment lien creditors of MBM. As pointed out at the hearing in the district court, the instant case presents a classic example of a "circular priority" problem: the MBM attorneys have priority over the government by virtue of the Tax Lien Act; the government has priority over the judgment lien creditors because of prior filing; and the judgment lien creditors claim priority over MBM's attorneys by operation of state law. In United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), the Supreme Court established a rule for resolving circular priorities. First, the portion of the fund for which federal law creates a lien superior to that of the government's tax lien is set aside. In the present case, the claim of MBM's attorneys is set aside as superior to the tax lien. Second, the government's claim is satisfied out of the remaining fund. In the instant case, that satisfaction exhausted the fund. Third, the reserved portion of the fund is distributed among competing claimants according to the priorities established under state law. See also United States v. Buffalo Savings Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963); W. Plumb, Federal Tax Liens 116-19 (3d ed. 1972). Thus, in the instant case we must decide whether MBM's attorneys enjoyed a lien on the judgment fund superior under state law to the lien of World Express. We hold that they did.
 
 
 21
 At common law in Illinois, an attorney could not acquire a lien on a judgment or on a fund recovered by means of his or her legal services unless there existed an express agreement that worked an equitable assignment. Dougherty v. Hughes, 165 Ill. 381, 396-97, 46 N.E. 229 (1896); Story v. Hull, 143 Ill. 506, 512, 32 N.E. 265 (1892). In 1909, however, Illinois enacted its Attorneys' Lien Act, which accorded attorneys new legal rights in enforcing their claims to compensation. This statute, substantially unchanged since its enactment, now provides:
 
 
 22
 Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys rendered or to be rendered for their clients on account of such suits, claims, demands or causes of action. To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice. On petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than 5 days' notice to the adverse party, adjudicate the rights of the parties and enforce such lien.
 
 
 23
 Ill.Rev.Stat. ch. 13, § 14 (1982). Because this act created new rights in derogation of the common law, it has been strictly construed by Illinois courts. Haj v. American Bottle Co., 261 Ill. 362, 366, 103 N.E. 1000 (1913); Cazalet v. Cazalet, 322 Ill.App. 105, 107, 54 N.E.2d 61 (1944).
 
 
 24
 MBM's attorneys assert a lien under this statute. Although they did not serve their notice of attorneys' lien on the Board until September 17, 1980, over two years after World Express perfected its lien on MBM's assets, the attorneys nonetheless assert that they possess a prior perfected lien on the proceeds of the judgment entered against the Board. We are constrained, however, to reject MBM's claim under the Attorneys' Lien Act. The act states in clear terms that the attorneys' lien is perfected "from and after the time of service of the notice," a provision that the Illinois courts have consistently interpreted to mean that no enforceable lien is created until the requisite notice has been served. See, e.g., Rhoades v. Norfolk & Western Ry., 78 Ill.2d 217, 227, 35 Ill.Dec. 680, 399 N.E.2d 969 (1979); Standidge v. Chicago Railways, Co., 254 Ill. 524, 534, 98 N.E. 363 (1912); Cazalet v. Cazalet, 322 Ill.App. 105, 107, 54 N.E.2d 61 (1944); Steele v. Lamb, 184 Ill.App. 577, 580 (1914) ("Under this statute, no lien exists until the prescribed notice is served ...."). Moreover, we are unable to agree with MBM's suggestion that the notice requirement of the statute does not affect the priority of the attorneys' lien. In Fornoff v. Smith, 281 Ill.App. 232 (1935), an Illinois court held that a lien perfected by service of a garnishment summons took priority over a subsequently perfected attorneys' lien. We have discovered no Illinois case to the contrary and are thus bound by this interpretation of state law. Accordingly, we hold that MBM's attorneys did not acquire a lien under the Attorneys' Lien Act superior to that of World Express.
 
 
 25
 MBM's failure to establish a prior lien under the statute, however, does not necessarily defeat its claim to priority over World Express. MBM alternatively asserts an equitable lien under Illinois law. MBM's argument on this issue contains two distinct strands, which it appears to have confused. MBM's attorneys first rely on the so-called "common fund" doctrine, which "is based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." Baier v. State Farm Insurance Co., 66 Ill.2d 119, 124, 5 Ill.Dec. 572, 361 N.E.2d 1100 (1977); Smith v. Marzolf, 81 Ill.App.3d 59, 63-64, 36 Ill.Dec. 369, 400 N.E.2d 949 (1980). Under this doctrine, when an attorney labors to create a fund that benefits another party, that party is responsible for compensating the attorney in proportion to the benefit so received. Recent case law in Illinois, however, has restricted the application of the fund doctrine to class actions and insurance subrogation cases. In particular, one recent decision refused to apply the doctrine in favor of an attorney who sought to collect part of his fees from a creditor of his client which asserted a statutory lien on the proceeds of the litigation. Maynard v. Parker, 54 Ill.App.3d 141, 11 Ill.Dec. 898, 369 N.E.2d 352 (1977), aff'd, 75 Ill.2d 73, 25 Ill.Dec. 642, 387 N.E.2d 298 (1979). Thus, even if World Express is "incidentally benefitted" by the creation of the fund disbursed by the district court, it would not be responsible to MBM's attorneys for a portion of their fees. "We cannot justify extending the common fund doctrine to require a mortgagee or a furniture store or any other creditor (World Express) of a plaintiff (MBM) to contribute to the fees of the plaintiff's attorney if the funds recovered by the litigation are used to satisfy the plaintiff's obligations." 54 Ill.App.3d at 145, 11 Ill.Dec. 898, 369 N.E.2d 352. The common fund doctrine does not, therefore, confer on the MBM attorneys a lien prior to that of World Express.
 
 
 26
 The MBM attorneys' second argument is that an equitable lien was created in their favor by the contingent fee agreement they executed with MBM on May 5, 1977. They contend that this contract constituted an equitable assignment to them of a portion of the fund recovered in the litigation with the Board.
 
 
 27
 As indicated above, the principle that an assignment of an interest in a judgment or fund can create an equitable lien is of ancient lineage in Illinois law. See Dougherty v. Hughes, 165 Ill. 381, 396-97, 46 N.E. 229 (1896); Story v. Hull, 143 Ill. 506, 512, 32 N.E. 265 (1892). Although the practical value of this rule of equity in the context of attorneys' liens has been significantly diminished with the enactment of the Illinois Attorneys' Lien Act, the rule remains a viable one and has survived the adoption of the Lien Act. See Department of Public Works v. Exchange National Bank, 93 Ill.App.3d 390, 393, 49 Ill.Dec. 218, 417 N.E.2d 1045 (1981) ("Both statutory and equitable liens exist in Illinois which attorneys may enforce in order to collect their fees."); Murukas v. Murukas, 99 Ill.App.2d 342, 345-46, 240 N.E.2d 797 (1968) ("(A)n attorney can acquire an equitable lien by an agreement with his client assigning to him a portion of a specific fund."). Therefore, we must determine whether the MBM contingent fee contract created an equitable lien taking priority over World Express.
 
 
 28
 The requirements for creation of an equitable lien have been stated as follows: "An equitable assignment is such an assignment as gives the assignee a title which, though not cognizable at law, equity will recognize and protect. There must be an implied appropriation of the fund, or of some designated part, proportion or percentage of it, to act as an equitable assignment." Lewis v. Braun, 356 Ill. 467, 477-78, 191 N.E. 56 (1934) (citations omitted). In considering claims to equitable liens based on contingent fee agreements, the Illinois courts have drawn a distinction between an actual assignment of a portion of a fund and a mere personal promise by the client to pay attorneys fees in an amount equal to a specified portion of the fund to be recovered or out of the proceeds of such a fund. Lewis v. Braun, 356 Ill. at 478-79, 191 N.E. 56; Cameron v. Boeger, 200 Ill. 84, 65 N.E. 690 (1902); Department of Public Works v. Exchange National Bank, 93 Ill.App.3d 390, 394, 49 Ill.Dec. 218, 417 N.E.2d 1045 (1981). Although there is some broad language in a few recent Appellate Court cases suggesting that contingent fee contracts generally do not constitute equitable assignments, Marcus v. Wilson, 16 Ill.App.3d 724, 732, 306 N.E.2d 554 (1973); Anastos v. O'Brien, 3 Ill.App.3d 1015, 1020, 279 N.E.2d 759 (1972), the cases involving contingent fee contracts are not uniform and they have all turned on the precise language employed in the fee agreement. Accordingly, we must attempt to reconcile these decisions in estimating how Illinois courts would decide the instant case.
 
 
 29
 We find three Illinois cases to be particularly relevant. In Cameron v. Boeger, 200 Ill. 84, 65 N.E. 690 (1902), the Illinois Supreme Court found no equitable assignment in a contract that provided that the attorney would receive as compensation for his services "one-third of whatever is realized or obtained" from the contemplated litigation. The court emphasized that this language amounted to a mere promise by the client to pay the attorney compensation, "the amount of which was to be determined by what was recovered." 200 Ill. at 91, 65 N.E. 690. More recently, the Illinois Appellate Court held that a contract which stated that the client would personally pay the attorney "an amount equal to" a specified percentage of the recovery was not an equitable assignment of a portion of the fund. Department of Public Works v. Exchange National Bank, 93 Ill.App.3d 390, 49 Ill.Dec. 218, 417 N.E.2d 1045 (1981). By contrast, the court in Lewis v. Braun, 356 Ill. 467, 191 N.E. 56 (1934), upheld as an equitable assignment a contingent fee agreement providing that, "(O)n the total amount recovered up to the sum or value of $65,000 the fee and payment for services shall be 20 per cent thereof ...." The court in Lewis distinguished Cameron and, over a dissent predicated on Cameron, held that the contract in question could not be construed as a personal covenant by the client to pay but rather must be read as imposing a lien directly on the fund to be created. Thus, under these state court decisions which we are bound to follow, it appears that contingent fee agreements may indeed constitute an equitable assignment if phrased so that the attorney can look directly to the fund for payment of his or her fees.
 
 
 30
 It remains for us to determine whether the contingent fee contract between MBM and its attorneys was an actual assignment of a portion of the fund to be created by the litigation against the Board or was a mere promise by MBM to pay the attorneys out of the proceeds of that litigation. The language employed in the May 5, 1977, contract is in our view decisive: "The terms of that contingent-fee arrangement entitle us to one-third (1/3) of any and all recoveries made on the claims by virtue of trial, settlement, or other disposition of the proposed litigation." (Emphasis supplied). This language, unlike the contracts at issue in Cameron and Department of Public Works, suggests assignment of a claim rather than a personal covenant to pay on the part of MBM. By the terms of this contract, MBM's attorneys became entitled to one-third of any and all recoveries and could thus look directly to the fund for satisfaction of their claim.
 
 
 31
 We therefore hold that MBM's attorneys enjoyed an equitable lien on the proceeds of the litigation against the Board, a lien which arose on the date the contingent fee contract was executed. Because under Illinois law an equitable assignment has priority over a subsequently served garnishment summons, Williams v. West Chicago Street RR, 199 Ill. 57, 64 N.E. 1024 (1902); National Bank v. Newberg, 7 Ill.App.3d 859, 865, 289 N.E.2d 197 (1972), the MBM attorneys possessed a lien superior to that of World Express and MBM's other judgment lien creditors. MBM's attorneys were accordingly entitled to receive the reserved fund of $166,478.62 (plus accrued interest) disbursed to them by the district court.
 
 V. CONCLUSION
 
 32
 For the foregoing reasons, the judgment of the district court is Affirmed.
 
 
 
 *
 This appeal was originally decided by unreported order on July 23, 1982. See Circuit Rule 35. The court has subsequently decided to issue the order as an opinion
 
 
 [1]
 Local Rule 32 of the Northern District of Illinois authorizes satisfaction of a judgment by means of payment to the court
 
 
 [2]
 At one time, World Express contended that the state court injunctions prohibiting the Board from paying MBM also divested the district court of the jurisdiction to hear the Supplemental Plea. Neither of these injunctions was entered in World Express' favor and it no longer bases its jurisdictional attack on them. Reply Brief of World Express, at 9
 
 
 [3]
 The district court granted MBM's oral motion to amend its complaint. World Express now contends that under Rule 15(a) of the Federal Rules of Civil Procedure, the district court erroneously permitted the amendment without also affording World Express advance notice and an opportunity to plead and to take discovery. Rule 15(a), however, authorizes the district court to dispense with responsive pleadings and in the instant case no purpose would have been served by filing a responsive pleading or taking discovery concerning the amended complaint. The amendment alleged no new matters but simply restyled the original Supplemental Plea without altering its substance. World Express chose not to respond to the Supplemental Plea and cannot now claim a right to respond to an amended Plea that contained the same allegations
 
 
 [4]
 The district court in the original suit between MBM and the Board found as a matter of fact that MBM's principal place of business, for purposes of diversity of citizenship, was New York. This court has held that a corporation's principal place of business is the location of its principal executive office. Sabo v. Standard Oil Co., 295 F.2d 893 (7th Cir. 1961). Accordingly, New York is the location of MBM's principal executive office and the government's notices of tax lien were properly filed in that state. We therefore reject World Express' argument that it is not bound by this determination and that it is entitled to take discovery on the location of MBM's principal executive office. Cf. Avco Delta Corp. Canada, Ltd. v. U.S., 484 F.2d 692, 697 n.4 (7th Cir. 1973), cert. denied, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974) (suggesting that allegation of corporate residence in interpleader complaint may bind subsequent determination of principal executive office in same action). We also reject the argument because World Express did not raise the issue of principal executive office during the hearings before the district court
 
 
 [5]
 Section 6323 provides that even though notice of a tax lien has been filed, such lien shall not be valid against a proper attorneys' lien:
 Attorneys' liens.-With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforcible against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement ....
 26 U.S.C. § 6323(b)(8) (1976).