EVELYN WATKINS, Plaintiff-Appellant, v. GMAC FINANCIAL SERVICES *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—01—4422

Opinion filed January 15, 2003.

Neal S. Gainsberg and Jared B. Staver, both of Staver & Gainsberg, P.C., of Chicago, for appellant.

Nelson L. Mitten and Norbert Glassl, both of Riezman Berger, P.C., of St. Louis, Missouri, for appellee GMAC Financial Services.

JUSTICE WOLFSON delivered the opinion of the court:

Plaintiff Evelyn Watkins bought a car financed by GMAC Financial Services (GMAC) and an insurance policy from National Heritage Insurance Company (National) for the car. The car was stolen and damaged.

When National did not offer to pay for the loss, Watkins retained an attorney, Jared B. Staver, under a contingency fee agreement. Staver secured a lien on any proceeds from National under the Attorneys Lien Act (Act) (770 ILCS 5/1 (West 2000)). Staver then reached a settlement in which National agreed to pay for the loss of the car in

return for the title. When Staver contacted GMAC about its share of the settlement and release of the title, GMAC refused to release the title and endorse the settlement draft. GMAC contended it was entitled to all the insurance proceeds and was not required to release the title to the car.

Watkins then sued GMAC and National to determine the parties' rights to the settlement money and for breach of contract. Watkins and GMAC filed cross-motions for summary judgment. The court denied Watkins' motion and granted GMAC's motion on all counts. Watkins appeals the trial court's decision. We affirm.

## FACTS

On August 31, 1999, Watkins entered into a contract with GMAC. Under the contract, GMAC financed Watkins' purchase of a car. The contract contains, among other things, provisions allowing Watkins to prepay any portion of the loan and providing that GMAC may use insurance proceeds to reduce the amount Watkins owes:

> "You can prepay all of your debt and get a refund of part of the Finance Charge.
>
> ***
>
> If the vehicle is lost or damaged, you agree that the Creditor may use any insurance settlement to reduce what you owe or repair the vehicle."

The contract also contains the following provision providing GMAC with a security interest in the proceeds of insurance policies:

> "You give the Creditor a security interest in *** any proceeds of insurance policies or service contracts on the vehicle."

The title for the car, which was issued on October 22, 1999, shows GMAC is a lienholder.

In September 1999, Watkins purchased an automobile insurance policy for the car. The declarations page of the policy states, "LOSS PAYEE: ANY LOSS IS PAYABLE AS INTEREST MAY APPEAR TO THE NAMED INSURED AND *** [GMAC]."

On January 30, 2001, Watkins' car was stolen and damaged beyond repair. Despite receiving notice of the loss, National did not offer to pay under the policy. On April 4, 2001, Watkins retained Staver to represent her in her claim against National pursuant to a one-third contingency fee arrangement. On April 5, 2001, Staver sent to National notice of his lien on any proceeds under the Attorneys Lien Act and a demand to settle the claim for the total loss of the car.

On April 19, 2001, Staver reached a lump-sum settlement with National for $11,437.35, the total loss of the car. National agreed to send a settlement draft to Staver in that amount made payable to Watkins, Staver, and GMAC in exchange for the title to the car.

That same day, GMAC informed Staver that Watkins had an outstanding balance of $16,322.09. Staver sent a letter to GMAC advising it of the settlement and asking GMAC to release the title to the car and endorse the settlement draft. In exchange, Watkins would provide GMAC with $7,620.95, the amount of the settlement minus attorney fees. In the letter, Staver acknowledged Watkins' obligation to pay the remaining balance of $8,701.14.

GMAC refused to release the title to the car and to endorse the settlement draft. GMAC contends its claim to the proceeds of the settlement is superior to Staver's lien, entitling GMAC to all of the settlement proceeds.

Watkins filed a three-count complaint contending: (1) GMAC is required to endorse the settlement draft, release the title to the car, and accept the proceeds minus attorney fees; (2) GMAC breached the contract by not accepting Watkins' offer to prepay $7,620.95 of her debt; and (3) under the common fund doctrine, GMAC is required to pay Staver's fees and expenses.

Watkins filed a motion for summary judgment on all counts of her complaint. The trial court denied her motion. The trial court held: (1) Watkins received no proceeds to which Staver could claim a lien; (2) even if Staver had a valid lien, his interest in the proceeds was junior to GMAC's interest; (3) GMAC did not breach the contract by refusing Watkins' offer to prepay part of her debt because what Watkins sought was a contract modification; and (4) the common fund doctrine did not apply because Watkins' debt to GMAC was independent of her settlement with National.

GMAC then filed its own motion for summary judgment on all counts, which the trial court granted.

## DECISION

■ Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2000); *Frank v. Edward Hines Lumber Co.*, 327 Ill. App. 3d 113, 126, 761 N.E.2d 1257 (2001). The standard of review on appeal from a grant of summary judgment is *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

## Count I

Watkins contends (1) Staver's lien attaches to the settlement proceeds, and (2) Staver's lien is superior to GMAC's interest in the proceeds. Because our decision on Watkins' second contention disposes

of this count, we need not decide whether Staver's lien attaches to the proceeds of the settlement.

In support of her contention that Staver's lien is superior to GMAC's interest in the settlement, Watkins says the Attorneys Lien Act establishes the superiority of Staver's lien. According to Watkins, "[t]he legislature could have made an exception [to the attorney's statutory lien for] another lien holder; it chose not to." Watkins contends her interpretation of the Act is consistent with public policy, which is to "protect[ ] individuals of less financial means by providing them access to legal services through a contingency fee arrangement." GMAC responds that under the Uniform Commercial Code (810 ILCS 5/1—101 *et seq.* (West 2000)) its security interest in the proceeds is superior to Staver's interests.

■ The Attorneys Lien Act states, in relevant part:

"Attorneys at law shall have a lien upon all claims, demands and causes of action *** which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients ***. To enforce such lien, such attorneys shall serve notice in writing *** upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice." 770 ILCS 5/1 (West 2000).

■ Contrary to Watkins' contention, an attorney's lien under this statute is not always superior to other secured interests. Generally, "the lien which is first in time has priority." *Home Federal Savings & Loan Ass'n of Centralia v. Cook*, 170 Ill. App. 3d 720, 724, 525 N.E.2d 151 (1988). A statutory attorney's lien is not an exception to this rule. For example, in *Fornoff v. Smith*, 281 Ill. App. 232 (1935), the court held the attorney's lien in that case was junior to the interests of a judgment creditor where the creditor perfected his interests before the attorney did. *Fornoff*, 281 Ill. App. 232.

■ In *McKee-Berger-Mansueto, Inc. v. Board of Education of the City of Chicago*, 691 F.2d 828 (7th Cir. 1982), the attorneys claimed they possessed an interest in judgment proceeds superior to that of a party that perfected its interest before the attorneys did. In rejecting the attorneys' argument, the Seventh Circuit Court of Appeals said:

"The [Attorneys Lien Act] states in clear terms that the attorneys' lien is perfected 'from and after the time of service of the notice,' a

provision that the Illinois courts have consistently interpreted to mean that no enforceable lien is created until the requisite notice has been served. [Citations.] Moreover, we are unable to agree with [the attorneys'] suggestion that the notice requirement of the statute does not affect the priority of the attorneys' lien." *McKee-Berger-Mansueto*, 691 F.2d at 835.

Citing *Fornoff*, the court in *McKee-Berger-Mansueto* held that the attorneys' lien was junior to the other party's prior-perfected interest. *McKee-Berger-Mansueto*, 691 F.2d at 835. Watkins' public policy argument fails in the face of this established case law.

■ Staver's lien is junior to GMAC's interests because GMAC perfected its interest in the insurance proceeds first. Under section 9—306[1] of the Uniform Commercial Code, a security interest in "[i]nsurance payable by reason of loss or damage to the collateral" is perfected "if the interest in the original collateral was perfected." 810 ILCS 5/9—306(1), (3) (West 2000).

■ GMAC obtained its interest in the car and the insurance proceeds through the financing agreement signed on August 31, 1999. Additionally, GMAC is named as a loss payee under the insurance policy and is identified as lienholder on the title of the car. The title was issued on October 22, 1999. Thus, GMAC's interest in the proceeds of the National insurance policy was perfected no later than October 22, 1999, about 1 1/2 years before Staver perfected his lien by sending notice to National. Given the priority of GMAC's interest, GMAC is entitled to the proceeds of the insurance policy.

## Count II

■ Watkins contends GMAC breached the terms of the financing agreement by not cooperating with her attempt to prepay a portion of her debt under the financing contract. In support, Watkins directs this court's attention to clauses in the contract that allow her to prepay her debt. Because GMAC has breached the contract, Watkins says, the financing agreement is null and void and GMAC is not entitled to any proceeds from the settlement. We do not agree with Watkins' argument.

Watkins specifically made the prepayment contingent on GMAC's agreement to release the title. In his April 19, 2001, letter to GMAC, Staver says GMAC will receive the net proceeds from the settlement *"in exchange* for the title to my client's vehicle so that I can tender the title to National Heritage." (Emphasis added.) The letter shows

---

[1]Nearly all of Article 9 of the Uniform Commercial Code was rewritten effective July 1, 2001. The parties do not dispute that section 9—306 as it existed prior to July 1, 2001, applies in this case.

Watkins sought to do more than merely exercise her right to prepayment under the contract. She also sought to compel GMAC to release the title to the car—something that GMAC was not required to do under the contract. In other words, Watkins attempted to modify the contract. But her attempt failed because the requirements for a contract modification are not present here.

A contract modification must satisfy the same criteria required for a valid contract: offer, acceptance, and consideration. *Nebel, Inc. v. Mid-City National Bank of Chicago*, 329 Ill. App. 3d 957, 964, 769 N.E.2d 45, 51 (2002). Preexisting obligations are not sufficient consideration. *Johnson v. Maki & Associates, Inc.*, 289 Ill. App. 3d 1023, 1028, 682 N.E.2d 1196 (1997).

In this case, both acceptance and consideration are lacking. GMAC did not agree to modify its obligations. Also, in exchange for release of the title, Watkins was offering to do what she was already obligated to do under the contract—turn over the proceeds from the insurance settlement. She did not offer any new consideration. Without an acceptance and consideration, Watkins cannot enforce her proposed modification to the financing agreement. Absent an enforceable modification requiring GMAC to release the title, GMAC did not breach the contract by refusing to accept the partial prepayment in return for releasing the title.

## Count III

Watkins also contends the common fund doctrine applies in this case because GMAC is receiving a benefit from Staver's work without participating or contributing to the effort involved in obtaining the settlement. GMAC responds that Watkins' debt to GMAC is wholly independent of the settlement, making the common fund doctrine inapplicable in this case. We agree with GMAC.

■ Under the common fund doctrine, "[t]he litigant or lawyer who recovers a common fund for the benefit of others is entitled to a reasonable attorney fee from the fund as a whole." *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 573, 739 N.E.2d 1263 (2000). The doctrine prevents parties from being unjustly enriched by the lawyer's efforts. *Scholtens v. Schneider*, 173 Ill. 2d 375, 385, 671 N.E.2d 657 (1996).

The doctrine, however, does not apply in cases such as this one, where the debt paid from the fund existed independently of the creation of the fund. In *Maynard v. Parker*, 75 Ill. 2d 73, 387 N.E.2d 298 (1979), plaintiff was hospitalized and received a hospital bill for services provided by the hospital during his stay. Plaintiff's insurer issued a check made payable to plaintiff, plaintiff's wife, plaintiff's at-

torney, and the hospital. Plaintiff sued to determine the rights of the parties to the insurance proceeds. He contended the hospital should pay his attorney costs and a percentage of the hospital's recovery. *Maynard*, 75 Ill. 2d at 74.

The court rejected plaintiff's argument. The court said: "[The] plaintiff's liability to the hospital was not dependent upon the creation of a fund; plaintiff was a debtor obligated to pay for the services rendered by the hospital out of any resources which might become available to him." *Maynard*, 75 Ill. 2d at 75. The court concluded the common fund doctrine did not apply. *Maynard*, 75 Ill. 2d at 75-76.

■ The facts in this case are analogous to those in *Maynard*. Watkins' obligation to GMAC existed before, and is wholly independent of, the settlement with National. While GMAC will receive proceeds from the settlement, those proceeds are money due to GMAC from Watkins under the financing agreement. Without the settlement, Watkins would still be liable to GMAC for the remaining balance of $16,322.09 due under the contract. Thus, GMAC will not be unjustly enriched from receiving the insurance proceeds without contributing to Staver's costs and fees.

The Illinois Supreme Court, in the exercise of its supervisory authority, has directed us to reconsider the case in light of its decision in *Bishop v. Burgard*, 198 Ill. 2d 495, 764 N.E.2d 24 (2002). *Watkins v. GMAC Financial Services*, 202 Ill. 2d 664 (2002). We have done so. We find *Bishop* does not change our view of this case; it is factually distinguishable.

In *Bishop*, the plaintiff incurred medical expenses as a result of injuries sustained in a car accident. *Bishop*, 198 Ill. 2d at 497. Her company's ERISA plan paid out $8,576.30 to her and her healthcare providers for the medical expenses. The plaintiff retained counsel, who procured a settlement offer of $21,500 from the person who had caused the accident. The ERISA plan had previously claimed a lien in the amount of $8,576.30 on any proceeds the plaintiff received as settlement. On appeal, the plaintiff argued the common fund doctrine required the plan to reimburse her attorney for the reasonable value of legal services rendered in protecting the plan's subrogation lien.

The supreme court applied the common fund doctrine, holding the circuit court properly reduced the amount the benefit plan received from the plaintiff's settlement amount. *Bishop*, 198 Ill. 2d at 510. The court held that but for the actions of Bishop's attorney in obtaining the settlement, there would have been no fund from which the plan could be reimbursed. Because the plan obtained the benefit of a lawsuit without contributing to its costs, it was unjustly enriched. *Bishop*, 198 Ill. 2d at 510.

In this case, unlike *Bishop*, Watkins' obligation to GMAC existed independently of the settlement obtained by her attorney. Watkins is liable to GMAC for the remaining balance under the contract.

## CONCLUSION

We affirm the decision of the trial court.

Affirmed.

SOUTH, P.J., and HALL, J., concur.