SECOND DIVISION

September 27, 2005

No. 1-05-0575

TM RYAN CO., an Illinois corporation,   ) Appeal from the 

) Circuit Court of

Plaintiff, ) Cook County.

 ) 

v. ) 

) 

5350 SOUTH SHORE, L.L.C.; COSMOPOLITAN )

BANK AND TRUST COMPANY, as trustee ) 

under Trust No. 30517; LASALLE BANK; )

COSMOPOLITAN BANK AND TRUST COMPANY; )

5350 SOUTH SHORE CONDOMINIUM )

ASSOCIATION; IMPERIAL COMPONENTS, INC.; )

S & S PANEL SALES CORPORATION OF )

ILLINOIS; UNKNOWN OWNERS and NON-RECORD )

CLAIMANTS, )

     )

Defendants. )

_______________________________________ )

) 

HANSEN & HEMPEL CO., an Illinois ) 

corporation, ) 

)

Plaintiff-Counter Defendant, )

)

v. )

)

5350 SOUTH SHORE, L.L.C., an Illinois )

limited liability company, et al., )

) 

Defendants-Counter Plaintiffs- ) 

Appellants, )

)

v. )

) 

BEN A. BORENSTEIN & CO., an Illinois ) 

corporation, )

) 

Third-Party Defendant-Counter )

Plaintiff-Appellee, )

)

and )

) 

NICHOLAS ARCHITECTS, INC., an Illinois ) 

corporation, and NAYYAR & NAYYAR ) 

INTERNATIONAL, a corporation, ) Honorable

) Clifford L. Meacham,

Third-Party Defendants. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

South Shore, L.L.C. (South Shore), received $115,000 from its liability insurer to pay the costs of its underlying litigation.  The law firm representing South Shore says it owns an attorney’s lien on $73,380 of the funds.  The trial court held the lien was not perfected.  The court found Ben A. Borenstein Co. (BABCO) was entitled to priority in the fund based on a prior judgment against South Shore in favor of BABCO.  We affirm.

FACTS

In the underlying litigation, South Shore filed a series of amended complaints against BABCO for breach of contract and Consumer Fraud Act violations.  On December 18, 2003, the trial court dismissed South Shore’s complaints and granted BABCO’s motion for summary judgment on its counterclaim.  South Shore was ordered to pay BABCO $387,683 in damages.  This court affirmed the trial court’s judgment on July 27, 2004.  
TM Ryan Co. v. 5350 South Shore, L.L.C., et al.
, Nos. 1-03-1835 and 1-04-0184, Cons. (2004) (unpublished order under Supreme Court Rule 23).   

On December 30, 2003, BABCO filed a Citation to Discover Assets against South Shore, with a return date of January 26, 2004.  The citation was directed to Tem Horwitz, the principal of South Shore.  On January 26, 2004, the court entered an order continuing the citation "generally for good cause based on the parties’ agreement."  Horwitz’s deposition was taken on June 2, 2004.  

On June 30, 2004, BABCO filed a petition for relief pursuant to section 2-1402 of the Code of Civil Procedure.  735 ILCS 5/2-1402 (West 2002).  In the petition, BABCO claimed entitlement to certain insurance proceeds owned by South Shore.  The money had been deposited into the client funds account of Weinberg Richmond, LLP (Weinberg), the law firm representing South Shore.  

In its response to the petition, South Shore contended: (1) Weinberg had perfected a lien on the insurance proceeds in the sum of $73,380, pursuant to the Attorney’s Lien Act (770 ILCS 5/1 (West 2002)); and (2) BABCO’s citation, and the lien asserted under it, had expired, pursuant to Illinois Supreme Court Rule 277(f) (134 Ill. 2d R. 277(f)).  

South Shore says it submitted a claim to Indiana Insurance Company (Indiana), its general liability carrier, demanding it provide indemnity and a defense in the underlying litigation.  After initially denying coverage, on May 16, 2002, Indiana sent a letter to South Shore acknowledging its duty to defend.  

South Shore says it sent a letter to Indiana on June 27, 2002.  In the letter, South Shore advised Indiana the matter had been settled and compromised.  South Shore demanded payment from Indiana in the amount of $317,650, including $72,656.40 in attorney’s fees and costs.  The June 27 letter is not in the record.  South Shore concedes the letter was not served by registered or certified mail.

In a letter to Indiana on December 19, 2003, South Shore demanded $436,939.55, including $72,642.73 in attorney’s fees and costs.  In a letter to Weinberg dated March 16, 2004, Indiana enclosed a Policyholder Release & Settlement Agreement.  Also enclosed with the agreement were two checks totaling $115,000.  The checks were made out to "Weinberg Richmond, Client Trust Account, for benefit of 5350 South Shore LLC."  Weinberg deposited the money in its client trust account.  South Shore says it currently owes Weinberg $73,380 in attorney’s fees, the amount of the claimed attorney’s lien.  

On August 6, 2004, South Shore moved to dismiss BABCO’s citation, arguing it had expired by operation of law, pursuant to Illinois Supreme Court Rule 277(f).  134 Ill. 2d R. 277(f).  The trial court denied the motion to dismiss.  Weinberg filed its own  petition asserting its interest in the insurance proceeds.  On August 11, 2004, BABCO served a citation directly on Weinberg.  

On December 15, 2004, the trial court issued an opinion and order granting BABCO’s petition to turn over the insurance funds and denying Weinberg’s petition.  The court found Weinberg’s lien was not properly perfected.  The June 27, 2002, letter was not served by registered or certified mail, and there was no evidence of actual notice.  Therefore, Weinberg’s lien did not take priority over BABCO’s lien.  The court found the common fund doctrine did not apply to the insurance proceeds.   

South Shore filed a motion for reconsideration, which the court denied.       

DECISION

I. Weinberg’s Attorney’s Lien

The trial court held Weinberg’s attorney’s lien was not properly perfected.  South Shore contends its June 27, 2002, and December 19, 2003, letters to Indiana demanding payment of the attorney’s fees and costs, were sufficient to perfect its attorney’s lien on the insurance proceeds.  

The Attorney’s Lien Act allows attorneys to file a lien on all claims, demands, or causes of action of their clients for their agreed fees, costs, and expenses.  770 ILCS 5/1 (West 2002).  To enforce such lien, the attorneys: 

"shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action."  770 ILCS 5/1 (West 2002). 

The attorney’s lien is a creature of statute and must be strictly construed.  
People v. Philip Morris, Inc.
, 198 Ill. 2d 87, 95, 759 N.E.2d 906 (2001); 
Cazalet v. Cazalet
, 322 Ill. App. 105, 107, 54 N.E.2d 61 (1944).  Attorneys who do not strictly comply with the Act have no lien rights.  
Philip Morris
, 198 Ill. 2d at 95.  

An attorney’s lien is perfected from and after the time of service of the notice on the party against whom the client has a claim.  
Watkins v. GMAC Financial Services
, 337 Ill. App. 3d 58, 62, 785 N.E.2d 40 (2003).
  Generally, a lien which is first in time has priority.  
Watkins
, 337 Ill. App. 3d at 62.  Where a judgment creditor perfects its interests before an attorney does, the attorney’s lien is junior to the interests of the judgment creditor.  
Watkins
, 337 Ill. App. 3d at 62.

A majority of the cases construing the Act have held a lien arises under the statute only if notice is served by personal service or certified or registered mail on the party against whom the lien is sought.  See
 
Unger v. Checker Taxi Co.
, 30 Ill. App. 2d 238, 241, 174 N.E.2d 219 (1961); 
Cazalet
, 322 Ill. App. at 111-12;
 
McKee-Berger-Mansueto, Inc. v. Board of Education of City of Chicago
, 691 F.2d 828, 834-35 (7th Cir. 1982); 
Preferred Management Installations, Inc. v. L.F.D. Holding Co.
, No. 99 C 4849, slip op. at 4-5 (N.D. Ill. July 11, 2001);  
Benvenuto v. Action Marine, Inc.
, No. 91 C 7365, slip op. at 5 (N.D. Ill. April 20, 1993); 
Williams v. State of Illinois
, 49 Ill. Ct. Cl. 109, 114-15 (Ill. Ct. Cl. 1996)
.
  See also 
Rhoades v. Norfolk & Western Railway Co.
, 78 Ill. 2d 217, 227, 399 N.E.2d 969 (1979) (lien attaches from and after the time of service of notice required by the statute).

South Shore concedes neither the June letter nor the December letter to Indiana was sent by certified or registered mail.  The June letter is not in the record.  Because neither letter complied with the statute’s service requirements, a valid attorney’s lien was not created.     

In cases where courts have upheld the validity of a lien despite a lack of proper service of notice, there was proof of actual notice.  See 
Cirrincione v. Johnson
, 184 Ill. 2d 109, 113, 703 N.E.2d 67 (1998) (the parties were not prejudiced by the technical deficiencies because the defendant and his attorney had actual notice of the physician’s lien, and any missing information was already known by the defendant); 
Bloom v. Richardson
, 308 Ill. App. 320, 31 N.E.2d 368 (1941) (abstract of op.) (defendant acknowledged receipt of the notice by return mail and informed plaintiff’s client of receipt of the notice when settlement was made).  Here, there is no proof Indiana had actual notice of the lien asserted by Weinberg.  South Shore points to the March 16, 2004, letter as proof of actual notice, but the letter did not acknowledge any attorney’s lien by Weinberg, 
nor did it specifically mention either the June 27, 2002, letter, or the December 19, 2003, letter.  Contrary to South Shore’s contention, the trial court did not consider BABCO’s actual notice of the lien, nor should it have.  Only Indiana’s actual notice of the lien is relevant for purposes of perfecting the attorney’s lien.     

In addition to the failure to properly serve notice,  Weinberg’s purported notice of attorney’s lien was lacking in other respects.  A written notice of an attorney’s lien must contain language claiming the lien and stating the interest the attorney has in the claim.  
In re Midway Industrial Contractors, Inc.
, 272 B.R. 651, 669 (Bankr. N.D. Ill. 2001); 770 ILCS 5/1 (West 2002).  See also 
Cazalet
, 
322 Ill. App. at 111-12 (no attorney’s lien created where the notice did not contain a notice of the amount of fee contracted for, or of any claim for lien, and no proof of legal or actual notice appeared in the record).  
There is no way to tell whether the June letter was sent, or  whether the contents of the notice satisfied the statutory requirements.  
While the December letter is in the record, that letter did not contain language claiming a lien, nor did it state the interest Weinberg had in the claim.  

II. BABCO’s Judgment Lien

Having found Weinberg never perfected its attorney’s lien on the insurance proceeds, our next inquiry is whether BABCO’s lien was properly perfected.  Under section 1402 of the Illinois Code of Civil Procedure, a judgment becomes a lien when the judgment creditor serves a citation in accordance with section 1402(a).  735 ILCS 5/2-1402(m) (West 2002).  BABCO served its citation on South Shore on December 30, 2003.  It served a citation on Weinberg on August 11, 2004.       

South Shore contends BABCO’s lien was not perfected as to the insurance proceeds because it served a citation on South Shore when the funds were still in the possession of Indiana.  South Shore says BABCO should have served a citation directly on Indiana in order to reach the funds.  South Shore relies on subsection 1402(m), which provides:

"(m) The judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this Section.  The lien binds nonexempt personal property, including money, 
choses in action
, and effects of the judgment debtor as follows: 

(1) When the citation is directed against the judgment debtor, upon all personal property belonging to the judgment debtor in the possession or control of the judgment debtor 
or which may thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation
.

(2) When the citation is directed against a third party, upon all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation."  (Emphasis added.)  735 ILCS 5/2-1402(m) (West 2002).     

Based on this language, BABCO was not required to serve a citation on Indiana.  The citation directed to South Shore, the judgment debtor, was sufficient to bind property "which may thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation."  735 ILCS 5/2-1402(m) (West 2002).  The insurance proceeds fit within that category.  Following service of the citation, in March 2004, the insurance proceeds came into the possession of South Shore.  The citation directed to South Shore was perfected at the time of service and reached the insurance proceeds which later came due to South Shore.

The cases relied on by South Shore do not apply here.  In 
In re Farm Credit Bank of St. Louis
, 18 F.3d 413 (7th Cir. 1994), the judgment creditor, Farm Credit, served a citation to discover assets on the debtors.  The debtors had pledged stock to a third party as security for a loan.  The court held Farm Credit’s lien did not extend to the stock because 
the debtors were not in possession of the certificates of stock when the citation was issued. 
 
Farm Credit
, 18 F.3d at 414-15.  Unlike the stock in 
Farm Credit
, the insurance money in this case was due to the judgment debtor and did come due in March 2004 when Indiana sent the insurance proceeds, before BABCO filed its petition in June 2004.    

In 
Cacok v. Covington
, 111 F.3d 52 (7th Cir. 1997), the plaintiff obtained a judgment against the defendant.  Upon learning the defendant was the plaintiff in a medical malpractice suit, she served the defendants in that action with a citation to discover assets.  The court held Illinois allows a judgment creditor to pursue a contingent asset such as a potential judgment by serving a citation to discover assets on a third party.  
Cacok
, 111 F. 3d at 53.  Contrary to South Shore’s contention, nowhere does the court in 
Cacok
 say the citation 
must
 be served on the third party, or that service only on the judgment debtor is insufficient to perfect the lien as to funds in the possession and control of a third party.

      BABCO contends South Shore’s claim for the insurance money was a "chose in action" under the statute.  This court has defined a chose as "a ‘cause’ for some duty due to [a party], or something similar to ‘rights’ under a contract or a breach of that contract."  
Gonzalez v. Profile Sanding Equipment, Inc.
, 333 Ill. App. 3d 680, 694, 776 N.E.2d 667 (2002).  We need not decide whether South Shore’s asserted claim against Indiana constituted a chose in action, as we find the citation directed to South Shore properly reached the money that was due to South Shore.   

South Shore raises an additional contention that the insurance proceeds were never the property of South Shore because they were sent directly from Indiana to Weinberg.  South Shore says the money was in direct payment to the attorneys who provided the defense.  The record does not support this contention.  Neither the checks nor the accompanying letter designate any portion of the $115,000 as a direct payment to Weinberg for attorney’s fees, and the checks are made out to "Weinberg Richmond, Client Trust Account, for benefit of 5350 South Shore LLC."  The money was the property of South Shore.  In addition, BABCO served a citation directly on Weinberg, following its citation served on South Shore. 

III. Expiration of the Citation to Discover Assets

South Shore contends BABCO’s citation expired pursuant to Supreme Court Rule 277.  Rule 277(f) provides:

"A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent’s first personal appearance pursuant to the citation or (2) the respondent’s first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner.  The court may, however, grant extensions beyond the 6 months, as justice may require.  Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise."  134 Ill. 2d R. 277(f).

The "personal appearance" need not take place before the court.
  At the judgment creditor’s election, the examination may be conducted by deposition.  134 Ill. 2d R. 277(e).  

The issue is when South Shore made a "personal appearance," triggering the six-month limitation period.  South Shore contends the January 26, 2004, order was a "personal or general appearance" by South Shore in the citation proceeding.  Therefore, the citation would have expired on July 26, 2004.  BABCO contends the six-month period did not begin until Tem Horwitz, the principal of South Shore, appeared for his deposition on June 2, 2004.     

The trial court’s order entered on January 26, 2004, states:

"This cause coming to be heard on the Citation to Discover Assets issued and served upon the Citation Respondent, counsel for the Citation Respondent having agreed to produce the Citation Respondent at the offices of [BABCO counsel] at a mutually agreeable time within 30 days of this date, and the court being advised in the premises; 

It is hereby ordered that the Citation to Discover Assets is continued generally for good cause based on the parties’ agreement."

In 
Textile Banking Co., Inc. v. Rentschler
, 657 F.2d 844 (7th Cir. 1981), the court discussed the meaning of "personal appearance" under Rule 277.  The respondent argued her physical appearance in Chicago constituted an "appearance pursuant to the citation," although she arrived three days after the agreed date, when plaintiff’s counsel refused to depose her.  The court held the respondent’s belated arrival did not constitute an appearance sufficient to invoke the six-month limitation period.  

"A citation to discover assets directs a party to present himself before the court on a specified day for an examination concerning the property or indebtedness of the judgment debtor.  The appearance contemplated by this statute is clearly more than mere physical presence within the judicial district." 
Textile Banking
, 657 F.2d at 852, quoting Ill. Rev. Stat. 1979, ch. 110A, par. 181(b).

In a civil action for money, where a summons requires appearance on a specified day, Illinois law requires the respondent to appear in person or by attorney at the time and place specified in the summons and to make the appearance known to the court.  166 Ill. 2d R. 181(b)(1); 
Textile Banking
, 657 F.2d at 852.         The citation filed by BABCO required Horwitz 
to personally appear in court for his examination on January 26, 2004.  It appears the parties later agreed Horwitz’s examination would be conducted by deposition.  The order entered on January 26, 2004, shows the parties agreed to extend the time of the examination to a future date.  The January 26, 2004, order was not an appearance pursuant to Rule 277(f) sufficient to trigger the six-month limitation period.  Neither Horwitz nor his counsel personally appeared before the court on that date.  Horwitz was deposed on June 2, 2004.  There is nothing in the record to indicate why the deposition was postponed until that time.  We assume it was by agreement of the parties.  The purpose of the six-month deadline is to prevent property from being encumbered by judgment liens indefinitely and to protect debtors from harassment by their creditors.  
100 Monroe Partnership v. Carlson
, 319 Ill. App. 3d 761, 769, 745 N.E.2d 554 (2001).  Where the parties agreed to postpone the deposition past the date in the citation, there is no violation of the six-month limitation.  

Furthermore, the language in the order continuing the citation "generally for good cause based on the parties’ agreement" constitutes an extension granted by the court pursuant to Supreme Court Rule 277(f).  Under these circumstances, we hold the "personal appearance" contemplated by Supreme Court Rule 277(f) occurred on June 2, 2004, and BABCO’s citation did not expire.  

IV. Common Fund Doctrine

Alternatively, South Shore contends Weinberg is entitled to its fees under the common fund doctrine.  The common fund doctrine does not apply.  Under the doctrine, "the litigant or lawyer who recovers a common fund for the benefit of others is entitled to a reasonable attorney fee from the fund as a whole."  
Morris B. Chapman & Associates, Ltd. v. Kitzman
, 193 Ill. 2d 560, 573, 739 N.E.2d 1263 (2000).  The rationale behind the doctrine is to prevent the beneficiaries of the fund from being unjustly enriched by the lawyer’s efforts.  
Watkins v. GMAC Financial Services
, 337 Ill. App. 3d 58, 64, 785 N.E.2d 40 (2003).  
The doctrine does not apply where, as here, the debt paid from the fund existed independently of the creation of the fund.  
Watkins
, 337 Ill. App. 3d at 64. 

BABCO’s claim arose from the judgment it obtained against South Shore in the underlying litigation.  It is wholly separate from the settlement between South Shore and Indiana.  If the insurance proceeds did not exist, South Shore still would be liable to BABCO for the amount of the judgment.  Thus, BABCO "will not be unjustly enriched from receiving the insurance proceeds without contributing to [Weinberg’s] costs and fees."  
Watkins
, 337 Ill. App. 3d at 65.    

CONCLUSION

We affirm the judgment of the trial court allowing BABCO’s petition, denying Weinberg’s petition, and ordering Weinberg to turn over to BABCO the funds held in its client trust account received on behalf of South Shore.

Affirmed.

GARCIA, P.J., and SOUTH, J., concur.